at Al. We all get so excited when we see an Illinois Commerce Comm'n case come in this morning. Similar to I think the first case we had this morning, I've got, it's Mr. Funk and is it Mr. Freelich? They're going to be splitting their time. We said 7 1 half. Maybe split hairs half a minute, we'll see. And then Ms. Jaeger? Jaeger, I'm about 0 for 5 this morning, I apologize. So, with my mistakes behind us, are you ready to proceed? I am, thank you. My comment had nothing to do with the attorneys or counsel in the case. There's so much record, so much volume of record to review when we get these cases. I apologize to the attorneys, but here we are. Good morning, your honors. May it please the court, my name is Maris Jaeger and I represent ACWA Illinois. The issues before you today concern the Illinois Commerce Comm'n's attempt to abandon the well-established prudence standard and circumvent the legislative intent of the Systems Viability Act to deny ACWA recovery of its prudent and reasonable capital investments. In the case below, the commission, for the first time, required ACWA Illinois to provide a new and different level of evidence in order to recover the cost of its investments and its acquired systems. That evidentiary standard is not required by the Public Utilities Act or the provisions of the Illinois Administrative Code, was arbitrarily applied to a subset of ACWA's capital investments, and denies cost recovery even in the absence of a finding of imprudence. The commission's decision was an arbitrary and unlawful departure from decades of right litigation, as well as its own decisions in the case below, in order to selectively disallow $12.5 million in investments in ACWA's Piatone and Oak Brook water systems. In an effort to codify these new evidentiary standards, the commission overreached its authority and bypassed the processes required by the Illinois Administrative Procedure Act to impose on ACWA new evidentiary requirements for all future Article IX rape cases, as well as new reporting requirements for any future acquisition under the Systems Viability Act, or the SVA. Those reporting requirements are applicable not only to ACWA Illinois, but to the other large investor-owned water and wastewater utilities in the state. We ask this Court to indicate those decisions as unlawful. Turning first to ACWA's prudent investments in its Piatone and Oak Brook water systems, since 2018, ACWA acquired 12 small water and wastewater systems pursuant to the SVA, which exists to encourage investment in and rehabilitation of small troubled water and wastewater systems throughout the state. Each of those systems were subject to review and commission approval pursuant to Section 9210.5 of the Public Utilities Act, and included Piatone and Oak Brook. As the owner of those systems, ACWA must provide its customers with safe and reliable water and wastewater service that meets regulatory and environmental standards. Often that means that, under Section 9 of the Public Utilities Act, ACWA is entitled to cost recovery of those prudent investments. ACWA submitted evidence supporting those capital investments in the case below, including the testimony of ACWA witness Tracy Fullen, a licensed professional engineer, and exhibits that identified the company's prudent and reasonable, the vast majority of ACWA's historical and forecasted investments from 2018 through the end of the 2025 test year. No party in the case below contested, let alone questioned, a single investment project or cost in those systems. However, despite the identical evidence supporting the investments in Piatone and Oak Brook, the commission arbitrarily required an additional accounting for cost variances between initial estimates and actual expenses in those systems alone. In the absence of that accounting, and despite ACWA's evidence proving why many investments cannot be forecasted prior to ownership of a system, the commission applied a blanket disallowance to Piatone and Oak Brook that did not identify any specific projects or costs. This is not the legal standard for cost recovery in Illinois. Section 9-11 of the Public Utilities Act is clear that ACWA is permitted to recover the cost of its investments that are prudent, an analysis that examines whether a reasonable person would have adopted that same standard of care under the same circumstances at the time the decisions had to be made. The commission did not make that determination. The commission did not engage with evidence, did not identify a single decision that was unreasonable or imprudent when made by ACWA, and failed to examine whether ACWA's investments in Piatone or Oak Brook were prudent in light of the company's service obligations to its customers. ACWA's evidence was unrebutted. Instead, the commission simply concluded that ACWA had not demonstrated why the costs in those systems were not anticipated or forecasted. But whether and to what extent the company is able to forecast or predict certain investments has no bearing on the prudency of that investment. The question is not whether that cost was foreseen, but instead whether it was prudent to undertake the work at the time the decision had to be made. The fact that ACWA did not predict or forecast a main break, inoperable valves, or the accelerated pace of lead surface line replacement does not change the fact that ACWA owns that system and must repair or replace that plant to serve its customers and satisfy its service obligations. It is prudent to undertake that work, regardless of whether ACWA identified it prior to owning that system. And the commission decision to apply a blanket disallowance in Piatone and Oak Brook was arbitrary, not only because it represents a drastic departure from many years of great case litigation, but also when comparing the evidence in the record below. For example, the commission approved as prudent investments in the Skyline water system, which was acquired pursuant to the SBA in 2020. The evidence supporting the investments in Skyline included identical work order groups and activity descriptions as evidence supporting work performed in Piatone water. That support can be found in the record in ACWA exhibits 12.02 and 12.03, which are in our appendix at pages 384 through 642. You can also compare the entries, as an example, for service line replacements in Skyline in the appendix at page 556 to the entries for service line replacements in Piatone in the appendix at page 583. The commission found that evidence sufficient to demonstrate prudence for Skyline, but it did not identify those projects as prudent for Piatone. And it is not possible to determine whether the commission concluded that that work in Piatone was imprudent because the commission's blanket disallowance did not identify any specific projects. ACWA Illinois has an obligation to serve its customers and provide safe and reliable service. However, the commission's decision in the case below disincentivizes investments that are necessary to meet these requirements. The commission asked only whether, with the hindsight available to it, that work should have been predicted before the company even owned those assets. This is not the prudent standard, but rather an arbitrary requirement for an additional level of proof that ultimately penalizes the company for acquiring disadvantaged systems pursuant to the SBA. It is this new evidentiary requirement a step further and mandated that in the future, all prudency analyses would depend on whether ACWA provided cost breakdowns with narrative explanations for each system. This is a clear overreach of the commission's statutory authority and creates yet another barrier to ACWA's ability to recover the cost of its investments. The commission's review in the case below was limited to the specific issues and investments before it, and the commission may not simply issue mandates or rulings that have no applicability to that proceeding. This Court has repeatedly affirmed that fact, including in Harrisonville Telephone Company v. the commission and just last year in Amarin Illinois Company v. the commission. Moreover, the commission's mandate that ACWA provide additional justification in every future rate case is not authorized by the Public Utilities Act, and it is not found in the regulations. Part 285 of the Illinois Administrative Code already sets forth the standard information that a water and wastewater utility must provide when it files an Article IX rate case, including specific data supporting capital recovery requests. Part 285 also requires that natural gas and electric utilities provide even more detail supporting certain large plant additions, but water and wastewater utilities are exempted from that requirement. The commission cannot revise or amend those rules if there is absent a rulemaking. Similarly, the commission's new reporting requirements that are applicable to all future acquisitions under the SBA following the date of this final order goes well beyond the commission's authority and ignores completely the requirements of the Illinois Administrative Procedure Act. The language of the SBA is clear, and it is deliberately silent on capital plans, forecasts, audits, risk assessments, or mitigation plans. Yet the commission is attempting to circumvent that law and create new barriers and disincentives to SBA acquisitions by requiring significant and detailed assessments that are not contemplated by that statute. This is unlawful. The commission cannot alter the plain language of the SBA based on its own preferences. And in confirming that these identical requirements are applicable to the other large water and wastewater utilities in the state, the commission is again attempting to establish a new rule of general applicability and bypass the notice and comment period required by the Administrative Procedure Act. Again, this Court has repeatedly affirmed that such efforts are unlawful. The SBA was enacted to address a very real problem in the water and wastewater industry in Illinois. Creating a new cost recovery standard that requires the development of accurate and precise investment forecasts prior to ownership of the system frustrates that purpose and signals that the prudency of the work itself is irrelevant to whether ACWA will be allowed to recover its costs. These efforts are clear overreach of the commission's authority, are contrary to law, and must be vacated. Thank you. If the commission is imposing new requirements in the future, is the issue right for us to consider today? It is, because the company must consider whether those requirements apply in the event it wants to undertake another rape case. Don't you have to wait until you get to that point, then file a motion for declaratory judgment of some sort? Can you do it right now, as you're doing? I'm sorry, could we file a motion for declaratory judgment? Yes. We certainly could, but I think the commission has made it very clear that they intend to apply these requirements in every future proceeding. The intent of the commission is not unclear, and the company is subject to these requirements, regardless of whether the commission is given the opportunity to reaffirm that. I kind of had a slightly different take on this. My question was, how does separating issues now, not whether they use an improper standard in this case, the issue of future requirements, how does that hurt you in this case? Well, in this case, it goes, the commission's final order goes well beyond the issues before it. It requires that the company, you know, consider whether or not it can even come in for an SBA proceeding without undertaking the cost and the time and the resources to comply with these requirements. And frankly, the commission's mandate for future rate cases is so vague as to be almost meaningless. The company would have to devote significant time and resources to that as well, much less the fact that we are here before you on appeal today, using our time and resources to appeal the commission's decisions in the order below. How is the commission supposed to respond when you give one estimate as to what your costs are going to be, and then, in the incident case, you disclose that you actually invested 700 percent more than the previous estimate, I guess? The commission should examine the specific projects. I want to emphasize that these initial estimates were entirely voluntary and very high level, which our engineering witness explained. It is nearly impossible to identify with any specificity the health and maintenance needs of buried vein of inaccessible plants, and so the commission should examine the specific projects. The commission should not take these initial high level estimates as any sort of statement of direction, and rather look at the specific projects in front of it today. Just because, you know, as I noted, there's no forecasted main break or additional EPA requirements does not mean that those costs are improved. Is there a difference between 1.07 and the properly admitted evidence? Would admission of 1.07 have impacted the outcome of this case? Well, yes. It may not have impacted the outcome, but it certainly is additional evidence that the commission decided to exclude 1.07. 1.07 not only has the source of those numbers that the commission relied on in its appendix to calculate the disallowance, it also contains even more granular and specific explanation of the projects that make up those numbers. So it's not simply the numbers, it's additional evidence. Thank you. Any other questions? I think I'm confused enough. No, thank you. And obviously you'll have your time for rebuttal. Yes. Go ahead. Good morning, Your Honors, and may it please the Court. Matt Freilich for the Attorney General. We ask the Court to affirm the commission's orders in their entirety. The Public Utilities Act authorized the commission to impose the reporting requirements, and the evidence supported the capital disallowances with respect to the Piatone and Oakport water systems. I'll be focusing my presentation this morning on the reporting requirements issues. My colleague from the Commerce Commission, Mr. Funk, will be focusing most of his presentation on the capital disallowances. With that said, I'm happy to answer the Court's questions about any part of the appeal. Turning to the information requirements, Section 4101 of the Public Utilities Act authorized the commission to impose these requirements. That section vests the Commerce Commission with broad supervisory and oversight responsibility over the public utilities that operate in Illinois. And requires the commission to keep itself informed of how the state's public utilities are operating their businesses. And that's exactly what the commission did in this case. It's not a rule of general applicability, Your Honor, because the commission's order in this case was based only on the circumstances of this case and bound only ACWA. I'll certainly acknowledge my colleague from the other side's point about how the commission also imposed reporting requirements in the Illinois American case. But again, that was based on the facts of the Illinois American's rape case and bound only Illinois American. So what we have here is, in this case, the commission made a statement of applicability to ACWA Illinois. In the Illinois American case, the commission made a statement of applicability to Illinois American. But neither of these two was a statement of general applicability, to quote the language of the Illinois Administrative Procedure Act. And the Supreme Court's actually reaffirmed that principle in the alternate fuels versus Illinois EPA case that we cited in our brief. And also more recently in Van Dyck v. White, that an agency's order in a single adjudicated case, based on the facts of that case, is not a statement of general applicability. The appellate court has reaffirmed that principle several times in the cases we cited on pages 23 to 25 of our brief. So this wasn't a statement of general applicability, and therefore it wasn't an administrative rule. So the Illinois Administrative Procedure Act's notice and comment provisions don't apply to it for that reason. In reading the briefs in this case, one question that came up to us, especially my folks in my office, was when the commission imposes a new rule for future filings, is the issue ripe for us to even consider now? But the fact that the commission put it in an order seems to make it now before us. How do you respond to that, or how do you analyze that issue? Well, I would agree with the Commerce Commission that the injury would actually manifest in the future rate case, or rather, in the future acquisition case, or wherever the company is required to present this information about the systems. That's when it would have to expend the time and resources to actually file these reports and explain the information about the acquired system to the commission. Right now, it's not clear whether the company is going to acquire any additional... Well, that's the issue, then, I guess. If they don't acquire anything else for maybe five years from now, is the commission going to come in and say, we've entered this order back in 2026, and exceptional limitations has run, or you're now barred from arguing this because you waited too long? So wouldn't it then be proper then to raise it in this case now before us? Well, I think it's a little difficult because, for one, as Your Honor mentioned, it's not certain that they're going to acquire an additional municipal water or sewer system. Also, just looking closely at the language of the commission's order, the commission said that these reporting requirements would only apply with respect to system acquisitions under the System Viability Act, which is Section 9210.5 of the Public Utilities Act. And Section 9210.5 itself has a sunset clause that's subsection N of the statute. So the Systems Viability Act will, by its own terms, expire at the end of 2028. So I think specifically with regard to Your Honor's question about five years out, under the current state of things, these reporting requirements can't apply to something that will happen five years in the future because the Systems Viability Act will expire before then, and the commission's order expressly applies itself only when the company makes additional acquisitions under that statute. I do want to be totally forthcoming and clarify to the Court that in the Illinois Senate, there has been a bill introduced that would extend the Systems Viability Act beyond the 2028 expiration date, but under the current state of things, as things currently stand, the Systems Viability Act will not exist after 2028, and therefore these reporting requirements will not either. So we're very welcome to pass that date comes and goes, and the company doesn't make any additional acquisitions that would require it to report this information regardless. With respect to the statutory question, my colleague from the other side brought up the Systems Viability Act as limiting the commission's authority to impose reporting requirements like this. As we explained in our brief, it doesn't. The Systems Viability Act only governs the accounting treatment of the purchase price of a new water or sewer system that a company acquires. It doesn't set any information requirements that apply generally, and it certainly doesn't limit the power that the commission otherwise has under Section 4101, which is what gives it oversight responsibility over the state's public utilities. And for similar reasons, Part 285 of the commission's regulations also don't limit the commission's power to impose a remedy like this. By their own terms, those rules only set forth the minimum information normally required for a utility to prove its rate case. The utility always has the burden of proof in its rate case, and the commission has the authority to ask for additional evidence. And in practice, utilities almost always submit additional evidence to prove their case to show that they met their burden. And the Commerce Commission has the power to require additional evidence as it is trying to figure out for itself whether the utility met its burden of proof. So for these reasons, the reporting requirements here were authorized by Section 4101 of the Utilities Act, were not forbidden by Section 9210.5 or by the commission's own regulations, and were not subject to the notice and comment provisions under the Illinois Administrative Procedure Act. And we therefore would hold that these reporting requirements were valid, and we ask the Court to affirm the commission's orders in their entirety. Unless the Court has any further questions, I'll see the remainder of my time to Mr. Buck. Thank you, Your Honors. Good morning. I'm going to please the Court. Robert Funk on behalf of the Commerce Commission. In addition to Mr. Freilich's comments for the people, I'd like to respond to ACWA's arguments regarding the partial disallowances for the Piatone and Oakbrook water systems. With respect to 10 of the 12 water and sewer systems that were at issue in the underlying docket, the commission found that ACWA's investments were prudent, both as originally estimated, and in several cases, the additional amounts that were spent over and above the pro forma estimates. But as to the Piatone and Oakbrook systems, the commission found that ACWA only proved that some of the investments were prudent. And ACWA's failure to prove the prudence of these investments, and its arguments before the Court today, are based on its mistaken belief that the AG or other parties had some type of burden of proof. And in this regard, ACWA mistakes the basis for the commission's disallowances. The issue on appeal is very straightforward. Are the commission's findings that ACWA failed to prove the prudence of the Piatone and Oakbrook investments supported by substantial evidence? And the answer to that question is yes. Whether substantial evidence supports the commission's finding is a factual issue, and the commission should only be reversed if its findings were against the manifest weight of the evidence. And this Court recently noted that it presumes the commission's decision is prima facie reasonable, and the burden of proof on all issues on appeal is on the utility. In this case, the commission made its findings regarding the prudence of ACWA's investments consistent with the judicially stated definition. Prudence is that standard of care, which a reasonable person would be expected to exercise under the same circumstances encountered by utility management at the time the investment decisions were made. As to the amounts the commission disallowed for Oakbrook and Piatone, the commission found that ACWA's only evidence were the ledger entries, and that was insufficient to prove prudence because it did not adequately explain the circumstances facing ACWA when it made the decision to spend the money. ACWA seeks to avoid the application of this deferential standard of review, because if it applies, it loses. Instead, it tries to change the standard of review to de novo, creating these other legal issues, which simply do not apply. The commission, and I'll get into detail as to the burden of proof in just a minute, but I think it's important for the Court to recognize and understand the commission routinely applies the prudence standard in multiple rape cases every year. It's innately familiar with the standard and how to apply it, and importantly, ACWA has not demonstrated that that standard was misapplied in this case. Particularly, ACWA misreads the decision in the City of Chicago to argue that the burden of proof shifted to the Attorney General and other parties, and that they were required to prove that ACWA's investments were imprudent. And this turned ACWA's burden of proof on its head. That's not how it works. ACWA is required to prove by preponderance of the evidence that its investments were prudently made. Ultimately, what do you think the standard of review is? Do you think it's abuse of discretion? Certainly, that standard has been related to the substantial evidence standard in other cases. And certainly, as Matt best weighed, the opposite conclusion must be clearly evident. That is to say that the opposite conclusion of the commission's finding that ACWA did not find, excuse me, that ACWA did not prove its investments were prudent, is clearly evident. And I don't think that any clearly evident fact can be found from the ledger entries. Certainly not that the investments were prudent. There's no evidence of any circumstances surrounding the utility and ACWA's decision to make those investments. Well, obviously, there was much testimony, a lot of evidence presented. To my note here, the commission, 170-page single-spaced order. Correct. I'll admit I haven't read the whole thing yet. I don't know if I have the time. But obviously, the commission went into great detail in its findings and rulings. It did. It spent several pages at the beginning of its order detailing the parties' various positions on the investments that were at issue in the underlying docket. To the extent counsel suggested that the commission didn't deal with the evidence, it's simply not true. They dealt with it in earnest. And what the commission found was that if ACWA gave them some description of why they invested the money, the investments got approved. The amounts that were disallowed had no description. There was no explanation as to what that money was spent on, other than the ledger entries that say T&D main or valve or fire hydrant, something like that. There's no reason why they needed to replace the fire hydrant, no reason why they needed to replace the valve. And as to that issue, the reason that ACWA didn't provide that evidence, apparently, is that both utility and its witness believed that they only had to provide testimony about specific projects if somebody objected. And Ms. Boland testified about several of the projects that were at issue, and then just stopped. She didn't talk about anything other than the EMA coin project, which the commission approved. She gave one paragraph of testimony on that matter. The commission approved it. But as to the balance of the $8 million, she testified to nothing, didn't explain any of the other investments. And as to Oak Brook, she offered no testimony. And she said that if the AG or some other party objected, she would provide additional evidence. But that's not the standard. The standard is that they have to show prudence. And what ACWA asked this court to accept is that the ledger statements are sufficient. And they haven't provided any examples of that ever being sufficient in the past. And it begs the question, if the ledger statements are sufficient, if Part 285 means there's a burden, why do they provide multiple rounds of testimony? They provide multiple rounds of testimony because the narrative explanation of what investments the utility is making and why it costs what they did has always been part of the commission's prudency analysis. This is nothing new. This is not a departure from anything the commission has done for decades. It's the same analysis applied to this set of facts. I have a question. On page 23 of your brief, you put forth the suing arguendo. The court concludes the commission's direction for a narrative explanation went too far. It may simply disregard the language. I'm having trouble accepting that. Correct, Your Honor. It can disregard that because the commission had already determined that ACWA failed to prove prudence. So it was essentially just additional reasoning by the commission as to why ACWA had not met its burden. The record doesn't contain any description, narrative explanation or otherwise, of the circumstances that ACWA faced when it made the decision to invest the millions in the Oak Brook system or the Teotihuacan system, which was allowed the $3 million. So at that point, the additional description of the commission's narrative explanation was unnecessary for the commission to reach its final determination. And what's more, it was simply gratuitous on the part of the commission in that it was attempting to let ACWA know, hey, you've got this burden wrong. Your witnesses haven't testified to it correctly. And this is the type of information that we always need in determining prudence. Thank you. Thank you. My time is up, if I could just wrap up very quickly, Your Honor. To the extent that ACWA talks about unprecedented levels of project-specific evidence, that is not true in just a couple of quick examples. As I've already noted, the commission approved the $3 million MR Corning project based on one paragraph. The commission approved the Manteno sewer system investment based on a couple of pages of Ms. Fullen's testimony. And to the extent that ACWA objects about specific projects, and nobody objected to a specific project, the reality is that there aren't any specific projects related to any amount that was disallowed by the commission. They can't tie the two together. So if there isn't criticism about a specific project, it's because ACWA didn't provide it. Every specific project that ACWA did specify, the commission allowed it. So to the extent that it's a red herring, if you would, as to the specific projects. The opposing counsel made reference to a decision we issued last year, Ameren Illinois Company versus Illinois Commerce Commission, and I think you made reference to it as well as far as our holding that the commission is entitled to great deference, but they cited the case also. Do you think that case plays any part in our analysis of your case? I think that the portion of the Ameren decision that affirmed the commission's disallowances with respect to the distribution plant in that case is somewhat applicable here. The commission found that the utility, in that case Ameren, had not provided specific evidence as to its investment for the distribution plant. And this court affirmed the commission's determination that because of the failure to provide that specific evidence, the utility failed to prove proof. I think the reverse clause of the commission's ruling about the natural gas, I think we found that the legislature had made concreting statutes governing electric rate distribution and rate setting but not natural gas, and the commission was imposing new rules or new requirements on natural gas distribution. That's the part we reversed. Is there any part of that that applies to this case? I would say that the court's decision, and we referred to that, if I recall, Your Honor, as the long-term red plant in that case. And what the commission did there was it directed the utility to provide this long-term red plant every two years, regardless of anything it does, just automatically every two years we have to do this. This court found that that direction needed to be passed pursuant to a rule under the Administrative Procedure Act. That's really different than what we have here. Here we have, for the first time, a review of ACWA's acquisitions pursuant to the SBA. The commission realizes, hey, ACWA didn't really do the due diligence correctly. We need better information in order to have consistency with rates and avoid rate spikes and so forth. And so it said, if you proceed again under the SBA, here's what we need in order to ensure that we have the information necessary. Because unlike in Ameren, under the SBA, the commission has a duty to make adjustments to the purchase price and the rate base that ultimately the rate payers have to bear. And so that's why they found, in this case, the collective body of 12 SBA cases from earlier indicated that they needed to do something to correct the information, should ACWA choose to proceed under the SBA again in the future. Thank you. Other questions thus far? No, thank you. Thank you. Your Honor, there's just a few points that I want to make sure that I revisit. First, regarding the question of whether this issue is right before this court, page 13 of our reply brief lays this out in more detail. But Section 10201 of the Public Utilities Act establishes a timeline by which the SBA can review the language the company has to seek an appeal. If we did not appeal this decision, we would lose the opportunity to do so. And I apologize, I don't have the language of the provision in front of me today, but I believe that Section 200.220 of the Illinois Administrative Code, which governs declaratory rulings, states that those rulings may not be appealed. So this is our only opportunity to appeal those decisions. And if we did not, it would be deemed waived in the future. Would it have made a difference if instead of putting it in this order, they waited and adopted a rule later? Or does it not make a difference? Adopted an actual rule for SINTA rules?  It certainly would have made a difference. The company would have had an opportunity to come in and provide comment on those rules and explain, again, exactly why those are just not practical or reasonable expectations. Second, to the point I believe the Attorney General's counsel made about Section 4101, that's the provision of the Public Utilities Act that allows for general supervision of utilities. That does not give the Commission the unfettered ability to make any rule anytime without restriction. The Commission is restrained by Section 9201. It is restrained by Section 10101, which provides that the Commission must engage in a rulemaking before it establishes a rule. So, turning to the Commission's counsel's statements about the record of evidence, a couple things that I want to make sure that I touch on. First, there's a lot of reference to ledger entries. A lot of characterization of this is just routine line items in an Excel sheet. I want to emphasize that the Commission found that evidence adequate to support the student's finding for the remainder of the Commission's systems. It isolated these two systems and required some additional level of evidence for them alone. So, while there's a lot of attention paid to whether or not those ledger entries are simply lines on a sheet, clearly that was enough for the Commission to make those findings in the other systems in the company's service territory. And it's not just the ledger entries. It's the lengthy and detailed testimony of our engineering witness. It's exhibits to her testimony, including Exhibit 3.02 to her direct testimony, which gives paragraphs describing some of these projects. The Commission's counsel states that we didn't provide an explanation of why valves and hydrants had to be installed. Well, setting aside the fact that no party in the case below asked that question, to which we certainly would have answered it, that type of investment work has been accepted in Aqua Illinois rate cases for decades. It is a routine part of system maintenance and system repair, and it is part and parcel of operating a water system. And no party and the Commission has never before required a detailed explanation as to why a broken valve controlling a water main needs to be repaired. And last, I just want to emphasize that acquired systems are not subject to a different standard of review. They are part of Aqua Illinois' system. Customers are Aqua Illinois customers. They are not held to any different evidentiary threshold or standard. And this focus on the due diligence in those systems is not a requirement of the Systems Viability Act. There's nothing in the Act that requires that the company undertake any sort of due diligence, much less rise to the standard of what the AG's consultant witness was suggesting. So with that, are there any questions? Other questions? No questions. Thank you. Thank you. Well, obviously, counsel, we will take the matter under advisement. We will issue an order in due course.